UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 22-cr-1002 |
| vs. | |
| MATTHEW DANIEL BIRCH, | **DEFENDANT'S BRIEF IN SUPPORT OF APPEAL TO DISTRICT COURT OF PRE-TRIAL ORDER OF DETENTION** |
| Defendant. | |

COMES NOW Defendant Matthew Daniel Birch, by and through his attorneys, Andrea D. Jaeger of Keegan, Tindal, & Jaeger, and in support of his appeal to the District Court of the pre-trial order of detention pursuant to 18 U.S.C. § 3145(c), states as follows:

## A. PROCEDURAL HISTORY

1. On January 20, 2022, an Indictment was filed, accusing Defendant of conspiracy to distribute a controlled substance, actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (count 1); and possession with intent to distribute a controlled substance, actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (count 2). CM/ECF No. 2.

2. On March 25, 2022, Defendant made his initial appearance and was arraigned. CM/ECF No. 8. The Government moved for detention, and Defendant was detained pending a detention hearing. CM/ECF Nos. 9–10.

3. On March 30, 2022, Defendant and the Government proceeded to detention hearing. CM/ECF No. 15. The Government called Sgt. Adam Williams; Defendant called Ms. Kasey Copeland. *Id.*; Det. Hrg TR 3:6–23:10 (Sgt. Williams), 27:11–40:20 (Ms. Copeland). Defendant's sealed Exhibit A, constituting medical records, was admitted. CM/ECF No. 15, Det.

Hrg TR 24:15; *see also* CM/ECF No. 17, 17-1, 17-2 (Defendant's sealed exhibit A). The Court heard argument and found Defendant had rebutted the presumption of detention. Det. Hrg TR 41:1–44:11 (Gov't argument), 44:14–49:6 (Defense argument), 49:8–55:12 (Court discussion and findings). The Court nevertheless declined to release Defendant, finding Defendant posed a risk of non-appearance and a danger to the community. Defendant was ordered detained. Det. Hrg TR 49:8–55:12; CM/ECF Nos. 15–16.

4. On April 12, 2022, Defendant requested an appeal to the District Court of the Magistrate Judge's order for detention pending trial. Following receipt of the detention hearing transcript, Defendant now submits the instant memorandum of law and argument in support of his appeal.

### B. LEGAL AUTHORITY AND ARGUMENT

5. When considering appeals of pre-trial detention orders, a district court reviews the magistrate judge's decision *de novo*. *U.S. v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985); *U.S. v. Adams*, 794 F. Supp. 2d 989, 990 (S.D. Iowa 2011) (citation omitted); *U.S. v. Stenger*, 536 F.Supp.2d 1022, 1025 (S.D. Iowa 2008). When reviewing the magistrate judge's detention order, the district court must make the same inquiry regarding a defendant's risk of flight and danger to the community as did the magistrate. *Maull*, 773 F.2d at 1484; *Adams*, 794 F. Supp. 2d at 990 (citation omitted); *see also* 18 U.S.C. § 3142. A motion seeking to appeal a release or detention order "shall be determined promptly." 18 U.S.C. § 3145(c).

6. As stated by the Supreme Court of the United States, "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *U.S. v. Salerno*, 481 U.S. 739, 755 (1987); *accord U.S. v. Smith*, 2017 WL 1731711 at *2. "The fundamental tradition in this country is that one charged with a crime is not, in ordinary

circumstances, imprisoned until after a judgment of guilt. … [T]he right to release is heavily favored and [ ] the requirement of security for the bond may, in a proper case, be dispensed with." *Bandy v. U.S.*, 81 S.Ct. 197, 197–98 (1960); *see also U.S. v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (noting legislative history of Bail Reform Act of 1984 stressing "'[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the defendant's interest in remaining at liberty prior to trial. … *It is anticipated that* [pretrial release] *will continue to be appropriate for the majority of Federal defendants.*'" (emphasis in original)).

7. Certain charged offenses carry with them a presumption for detention. 18 U.S.C. § 3142(e). Based upon the alleged offense and potential sentence in this case, Defendant is subject to a rebuttable presumption "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community…." 18 U.S.C. § 3142(e)(3)(A). Defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community." *U.S. v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

8. Here, Magistrate Judge Roberts correctly found Defendant had rebutted the presumption for detention. Det. Hrg TR 50:12–15. Defendant satisfied this burden by submitting evidence of his community ties, proposed third-party custodian, and medical and frail physical condition; Magistrate Judge Roberts noted Defendant "is a long-time resident of the community[,] [h]e does have family ties and friend ties to the community." Det. Hrg TR 50:13–15. Importantly, as well, Defendant's proposed third-party custodian has a history of over two decades of sobriety; she is uniquely positioned to understand Defendant's history of struggles with substance abuse, assist Defendant in his path of recovery, ensure Defendant is seeking and obtaining any necessary medical and substance abuse treatment, and provide the support of a "sponsor." Det. Hrg TR 32:2–

23, 37:17–25, 39:23–40:10 (Ms. Copeland's testimony she has been clean from meth for 21 years, has a safe home, has a history of utilizing NA, believes such treatment options would be beneficial to Defendant, would assist Defendant in making arrangements to obtain treatment, would turn Defendant in for refusing to go to treatment, sobriety is not threatened by Defendant's substance abuse issues, "could have had a say over it or he could have came and lived with me at the time he wouldn't be in this situation," and further testifying she believes she, through her sobriety, could "very much" be of benefit to Defendant and "very much" help him on his path towards sobriety).

9. Because the rebuttable presumption has been overcome, § 3142 requires Defendant's release on his personal recognizance unless such release would fail to meet the goals of reasonable assurance of presence and safety. 18 U.S.C. § 3142(b). Even if release on personal recognizance will not meet these goals, Defendant should still be released, only subject to certain conditions. *Id.* at (c). Only if there are "no condition[s] or combination of conditions [which] will reasonably assure the appearance of the person as required and the safety of any other person and the community," is Defendant's detention authorized. *Id.* at (e); *Orta*, 760 F.2d at 891–92 (noting court must follow statutory progression from release on personal recognizance to conditional release and statute mandates every form of release be considered before detention may be imposed); *Maull*, 773 F.2d at 1482; *Adams*, 794 F. Supp. 2d at 992 (citation omitted).

10. It is the Government's burden to show, by clear and convincing evidence, no condition or combination of conditions will reasonably assure the safety of any other person and the community and, by a preponderance, no condition or set of conditions will reasonably assure the defendant's appearance. 18 U.S.C. § 3142(f); *Orta*, 760 F.2d at 891; *Smith*, 2017 WL 1731711 at *2 (citation omitted); *Adams*, 794 F. Supp. 2d at 992 (citations omitted). In determining if conditions of release will reasonably assure Defendant's appearance and the safety of the

community, the court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against Defendant; (3) Defendant's history and circumstances including (a) character, mental and physical condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, Defendant was on probation, parole, or other release; and (4) the nature and seriousness of danger to the community or any person posed by Defendant's release. 18 U.S.C. § 3142(g); *Smith*, 2017 WL 1731711 at *2 (citations omitted); *Adams*, 794 F. Supp. 2d at 992 (citation omitted); *Abad*, 350 F.3d at 797.

11. This is not a case where there exists no set of conditions which could reasonably assure Defendant's presence or the safety of the community. As noted by the *Orta* court, the statute is designed to favor release over detention. *Orta*, 760 F.2d at 890. Indeed, "[t]he wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891 (also stating "Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial.").

12. Here, Defendant has a ready, willing, and able third-party custodian who can assume Defendant's custody, ensure he attends treatment (medical and substance abuse), provide a unique and valuable level of sobriety support unmatched by the "typical" or "average" custodian, and report Defendant if he fails to abide by the Court's orders. Further, Defendant's

13. Although the Government will likely argue the nature and circumstances of the offense and the weight of the evidence against Defendant weigh in favor of detention, it is important to remember Defendant is still innocent and presumed as such; any allegations against Defendant at this time, remain only that—allegations. Moreover, all charged offenses are serious

offenses, and all federal drug offenses are considered serious offenses. There is nothing atypical or heinously more egregious about this case compared to other similarly situated drug offenders.[1] At their worst, assuming, *arguendo*, the Government can subsequently prove the allegations of the offense and the substance of Sgt. Williams' testimony, the allegations here constitute common fact patterns often found in federal methamphetamine cases; stated differently, this case is run of the mill for similarly situated charged offenses. Keeping in mind constitutional principles and Congressional directives favoring release, where detention is intended to be the exception, the nature and circumstances of the offense and the weight of the evidence, then, do not take Defendant's case so outside the norm such there is *no* set of conditions which protect the interests in appearance and safety.[2]

14. Defendant's history and personal circumstances, most importantly, Defendant's physical condition, here weigh heavily in favor of release with conditions. As noted by Defendant's Exhibit A, Defendant suffers from a very serious medical condition far exceeding "routine" medical needs often faced by incarcerated individuals. Defendant receives care for "acute heart failure," shortness of breath, pulmonary embolism, and anxiety. *See* Exh. A, CM/ECF No 17-1, at p. 1. As noted by Defendant's Exhibit A:

---

[1] Also considered by § 3142(g) is the nature and seriousness of danger to the community or any person posed by Defendant's release. Examining this consideration, as well, does not indicate there is *no* set of conditions which protect the interests in appearance and safety. Like consideration of the nature and circumstances of the offense and weight of the evidence, there is nothing particularly heinously egregious such to take this case outside the heartland or the scope of similar run-of-the-mill drug allegations. Furthermore, there is no allegation Defendant has made any particularized threats to another specific individual such that consideration requires detention.
[2] Furthermore, there are many conditions which could be imposed including, but not limited to, location and GPS monitoring, curfew, home detention, substance abuse treatment, in or out-patient treatment, mental health treatment, physical health treatment, and the like. The US Probation Offices for the Northern and Southern Districts of Iowa are exceptional; Defendant is confident the USPO could monitor his supervision successfully and Defendant is committed to following its, and the Court's, directives.

> [Defendant] was hospitalized…at the University of Iowa from 1/4/2021–1/7/2021 for acute hypoxic respiratory failure secondary to heart failure with left ventricular ejection fraction of 10–15% as well as acute on chronic pulmonary embolus. He has a history of hypertension, methamphetamine abuse and heart failure. In the fall 2020, additionally he had a hospitalization for acute encephalopathy. He was found to test positive for methamphetamine as well as Adderall. He developed flash pulmonary edema and had to be intubated, with shock. … He does note pain and tingling in his fingers and toes, and some discoloration there as well. … He does have a family history of heart disease and coronary artery disease.

Exh. A, CM/ECF No. 17-1 at p. 1; *see also, e.g.*, pp. 20–22. Stated in an overly simplified manner, Defendant has been diagnosed, amongst other conditions, with "heart failure with reduced ejection fraction," "pulmonary embolism and infarction," "Stage 2 chronic kidney disease," "hypertension," "anxiety disorder," and "acute respiratory failure with hypoxia." *Id.* at p. 2; *see also, e.g.*, pp. 22, 58. Examination of his medical records reveals an intensive treatment and medication regimen. *See, e.g.*, *id.* at p. 2. Defendant has been on the heart transplant list, and, while in custody, he can no longer be on a heart transplant list. Det. Hrg. TR 26:3–16. These medical treatment needs are extreme, outside the scope of what the local jail and U.S. Marshals can be reasonably expected to provide, and are best provided in the community, where Defendant already has established care with specialists familiar with his case, background, and unique needs. Additionally, if released with conditions, it is hoped Defendant could resume a placement on the heart transplant list, a consideration of obvious importance to Defendant and his loved ones.

15. As noted by the pretrial services report, Defendant has always lived in Iowa, and his friends, family, and loved ones are in Iowa. CM/ECF No. 14 at pp. 1–2. Defendant's immediate family and children are in Iowa. *Id.* at p. 2. Further, Defendant has a GED and has a history of employment, although Defendant cannot work in his current condition due to his serious medical considerations. *Id.*

16. Upon examination of all considerations and the constitutional and statutory framework, particularly Defendant's mental and medical health needs, release with conditions is appropriate in this case.

WHEREFORE Defendant respectfully requests he be released with conditions pending trial.

Respectfully submitted,

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, and Jaeger
2322 E. Kimberly Rd., Ste. 140S
Davenport, IA 52807
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754/563-355-6666
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

**Certificate of Service**

The undersigned certifies that the foregoing instrument was electronically filed on April 22, 2022, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Andrea D. Jaeger*